SOUTHWESTERN BRUSH ELECTRIC LIGHT & POWER CO. *v.* LOUISIANA ELECTRIC LIGHT CO. *et al.*

(*Circuit Court, E. D. Louisiana.* April 18, 1891.)

PATENTS FOR INVENTIONS—INFRINGEMENT—INJUNCTION—WHEN DENIED.

A preliminary injunction will not be granted *pendente lite* to restrain an electric light company, which is extensively engaged in the business of lighting the streets and other public places in a large city, from using certain patented lamps, when it appears that complainant is insolvent, without any plant or property of any sort, and unable itself to conduct the business of lighting, so that the injunction would greatly inconvenience the public, and seriously injure defendant, which would have to take out the lamps and substitute others, not so well adapted to the purpose, while it would be of no benefit to complainant, which is protected by defendant's ability to respond in damages should the infringement be established at the final hearing.

In Equity.

J. R. *Beckwith*, H. L. *Lazarus*, and *Kerr & Curtis*, for complainant.
R. S. *Taylor* and *Farrar, Jonas & Kruttschnitt*, for defendants.
Before PARDEE, Circuit Judge, and BILLINGS, District Judge.

PER CURIAM. The complainant has brought suit against the Louisiana Electric Light Company for infringement of patent 219,208, which was granted to Charles F. Brush, September 2, 1879, for certain new and useful improvements in electric lamps; the improvements consisting in a device for burning two pairs of carbons successively in one lamp by automatically transferring the luminous arc from the pair first lighted when burned out to a second and fresh pair. The lamp, with the improvement, is known as the "Double Carbon Lamp," and is in nearly universal use for all-night lighting of streets and public places. A single pair of carbons will last only about seven hours. By the use of the patented improvement light is maintained throughout the night without renewing the carbons, as would otherwise be necessary. The case now comes before the court in a motion for preliminary injunction, and shows

that the Brush Electric Company., having acquired from Charles F. Brush the exclusive license and control to the patent aforesaid under a contract which gave it the sole and exclusive right to manufacture, sell, rent, use, or otherwise dispose of the apparatus described.in and covered by said patent throughout the whole of the United States, executed to the complainant an exclusive license and right to rent, sell, and use the invention in the state of Louisiana; that the defendant has infringed the said patent; that the Brush Electric Company has become hostile to the complainant, and declines to join in the action, and is therefore made a defendant. The Brush Electric Company is an Ohio corporation. It has not been served with process in this cause, nor does it appear. The patent has been sustained upon final hearing in the sixth and seventh circuits, and preliminary injunctions against infringers have been granted in several cases not yet heard upon the merits. The Louisiana Electric Light Company, the only defendant before the court, does not contest the validity of the patent, nor deny the infringement charged. It, however, opposes the granting of the preliminary injunction asked for.

1. It is urged that the necessary parties are not before the court to authorize the granting of an injunction. It is contended (a) that the complainant·is a mere licensee, and cannot maintain a suit for infringement unless the owner of the patent is joined as complainant, or at least is before the court; and (b) that the license given by the Brush Electric Company to the complainant has been revoked and annulled, according to the terms thereof, by the parent company, and the complainant no longer has any rights whatever in the patent.

2. It is urged that the injunction should not be issued because of the inconvenience to the public necessarily resulting, and the hardship thereby unnecessarily imposed upon the defendant company, the patented improvement being but a trifling part of the costly machinery composing a large and extensive plant.

3. It is said that the injunction should not issue because the complainant has been guilty of laches in asserting its rights.

These questions have been elaborately argued both orally and by brief, and have been given careful attention. We find it necessary at this stage of the case to decide only as to whether the preliminary injunction should issue on account of the public and private inconvenience necessarily resulting. It appears by the affidavits and exhibits that the Southwestern Brush Electric Light & Power Company was organized in the year 1881, with a capital stock of $300,000, for the purpose, among other things, of supplying the "cities, towns, and parishes or counties in the states of Louisiana and Mississippi, or either of them, and the streets, public buildings, hotels, mills, factories, stores, and houses therein with light under the various inventions or letters patent known as the 'Brush· Electric Light;'" that it thereafter entered into a very onerous contract with the Brush Electric Company of Cleveland, Ohio, by which for the various patents, including the one herein sued on, it assigned and conveyed to the said Brush Electric Company 48 per cent. of its capital

stock, and 48 per cent. of any increase of stock thereafter, and agreed that the dividends on said 48 per cent. of stock should be 48 per cent. of the net earnings, (no part of the same to be used for account of or for extension of business,) and assumed other burdensome obligations. The remaining 52 per cent. of stock was subscribed for by individual parties, and appears to have been paid up in full in cash.   The company established works, with expensive machinery, secured contracts for lighting streets and public places, and entered upon business according to the purposes of its charter.   Business was carried on under difficulties and without favorable results until 1888, when, the company being involved in controversies with the parent company, and overwhelmed with debt, failed.   Its property was seized under executions issued on large judgments against it; and everything it had in the way of plant, machinery, lamps, wires, etc., was sold out, leaving the company completely stranded, with a large indebtedness still hanging over it.   During its active operations it introduced, and at the time the company was closed out there was in use in the city of New Orleans, a large number of double-carbon lamps of the kind covered by the patent in issue in this case, which lamps, passing through various hands after having been sold by the marshal, came to and are now in the possession and use of the defendant company, and constitute about one-sixth of the double-carbon lamps now used by the defendant company.   At this hearing the complainant company is an insolvent corporation.   It has no lighting stations, no dynamos, no lamps, no lines, no franchises, and no money to procure any of these things.   If the city of New Orleans were buried in darkness it could not furnish one electric spark to help light it.   The affidavits show that the defendant, the Louisiana Electric Light Company, is extensively engaged in the business of supplying electric light to the city and citizens of New Orleans; that it has in operation for that purpose a central station, containing about 80 arc-lighting dynamos, propelled by engines of over 4,000 horse power, about 1,600 arc lamps, and over 200 miles of line wire.   It is lighting the streets and wharves of the city by contract with the municipal authorities, and hotels, theaters, and places of business, by contract with private consumers.   In all its arc lights which run all night it uses double-carbon lamps.   The said company has a paid-up capital stock of $500,000, and a plant which cost over $800,000.   Its solvency at present, and its future ability to respond for any damages growing out of the infringement complained of, is unassailed in this case.   An injunction, as asked for, would, temporarily at least, until substitutes could be supplied, compel the defendant to stop business, breaking its contract with the public authorities as well as with private consumers, to the great injury and inconvenience to the public.   Further than this, it appears that, even if the defendant company could continue to carry out its contracts and furnish light to the public by substituting single lamps for double lamps, still the inconvenience and injury to the public would be great because of the poor service while making such substitution, and thereafter while trimming the lamps in the middle of the night; and the inconvenience and injury

to the public would be enhanced on account of the danger necessarily resulting to the agents engaged in the nightly duty of trimming the lamps while the conducting wires are heavily charged with electric currents. The case presented is thus one where the benefit to the complainant is doubtful, and where the injury to the public and the defendant is certain. The rules governing the discretion of the court in granting or refusing injunctions in cases similar to the one in hand are well stated in Robinson on Patents, § 1200. We quote as follows:

"Reasons for withholding an injunction may also be found in its probable effect, if granted, either upon the interests of the plaintiff or those of the defendant or the public;" citing *Hat-Sweat Manuf'g Co.* v. *Davis Sewing-Mach. Co.,* 32 Fed. Rep. 401; *Covert* v. *Curtis,* 25 Fed. Rep. 43; *Irwin* v. *Dane,* 4 Fish. Pat. Cas. 359.

"Where the injury to the defendant would be out of all proportion to the benefit accruing to the plaintiff, or where the invention is a part only of some wider process or device whose use is essential to the business of the defendant, and whose abandonment must prove the ruin of his enterprise, the court may, if he is responsible, or tenders compensation to the plaintiff, refuse to interrupt his operations until the necessity therefor is made apparent on the final hearing;" citing *Hockholzer* v. *Eager,* 2 Sawy. 361; *McCrary* v. *Canal Co.,* 5 Fed. Rep. 367; *Potter* v. *Whitney,* 1 Low. 87; *Morris* v. *Manufacturing Co.,* 3 Fish. Pat. Cas. 67; *North* v. *Kershaw,* 4 Blatchf. 70; *Day* v. *Candee,* 3 Fish. Pat. Cas. 9; *Swift* v. *Jenks,* 19 Fed. Rep. 641; *Guidet* v. *Palmer,* 10 Blatchf. 217.

"If the cessation of the alleged infringing acts would prove injurious to the public, whose safety or convenience depend upon the use of the invention by the defendant, this likewise constitutes a sufficient reason for the denial of the application;" citing *Bliss* v. *City of Brooklyn,* 4 Fish. Pat. Cas. 596; *Blake* v. *Greenwood Cemetery,* 14 Blatchf. 342; *Ballard* v. *Pittsburgh,* 12 Fed. Rep. 783.

In *Grape Sugar Co. Case,* 10 Fed. Rep. 837, Judge WALLACE, after recognizing the complainant's rights under the patent, and the fact of defendants' infringement, said:

"On the other hand, the defendants have gradually created and developed an extensive market for glucose and grape sugar, so large that, if their works were stopped, the demand could not well be supplied, and serious inconvenience would result. They have not only invested a large capital in their manufacturing business, but they employ a great number of workmen, many of whom would be temporarily cut adrift if an injunction should be granted. It is difficult to see how the defendants could remove the patented apparatus without substantially dismantling and reorganizing their works. Under such circumstances, the equitable considerations which appeal to the discretion of the court, and, within well-recognized rules, should lead to the refusal of a preliminary injunction, cannot be ignored."

The complainant company having introduced these double-carbon lamps into public use, and the public having found them necessary to public safety, as well as convenient for business purposes, a court of equity should not deprive the public of such use, at least on a preliminary nearing, and at the suit of a complainant who is in no condition to supply the public demand at any cost or expense, and who is destitute of pecuniary means and all apparatus to such a degree as to make it rea-

sonably certain that an injunction causing such public inconvenience would be of no benefit to the parties obtaining it.

There was read on the hearing affidavits of Messrs. Thos. L. Airey, Isidore Newman, and others, capitalists and stockholders in the complainant company, to the general purport that the interest in the patent, as set forth in the bill, is the sole remaining asset of the company; that it is valuable, if it can be protected; and that, if the complainant was assured of protection, and could receive the revenues to which it is entitled under the said patent, and could be assured of protection therein, it would place the complainant company in good credit and active operation as a dividend-paying corporation; and that it would enable it to re-establish its lighting plant, enter again on the business of electric lighting, make good the investments of its stockholders, discharge its indebtedness, and afford the public the benefit which arises from a fair and open competition. In granting injunctions prior to the hearing on the merits the court deals only with existing facts, and the extent of the relief proper to grant is the protection of the complainant from irreparable injury pending the litigation. We are clear that the injunction *pendente lite* should be denied, and it is so ordered.