# Hundley *et al.* v. Chadick.

*Action on Attachment Bond.*

1. *Individual using partnership name; action by.*—In an action by C. on an attachment bond payable to "C & Co.," the complaint alleging that the bond was made payable to the plaintiff under the name of "C. & Co.," the plaintiff is entitled to introduce in evidence the affidavit, bond and writ of attachment in connection with proof that he, alone, composed "C. & Co."

2. *Action on attachment bond; improper argument of counsel.*—In an action on an attachment bond to recover damages for a mere wrongful attachment, the complaint not averring that the attachment was vexatious, nor claiming any punitive damages, it is error for the court to permit plaintiff's counsel, in his argument to the jury, against defendant's objection, to argue that the attachment was a vexatious, wilful and malicious persecution of the plaintiff, and that the jury ought to award him extraordinary damages for injury to his character.

3. *Implication against a party from failure to introduce witness; improper argument of counsel.*—Where a witness for the defendant testified as to the membership of a firm and as to its credit, and stated that he derived his information from one H., it was no more incumbent on the defendant than on the plaintiff to introduce H., as a witness on the subject; and it was improper to permit plaintiff's counsel, against objection by defendant, to comment, in argument to the jury, on defendant's failure to introduce H. as a witness.

4. *Ruling on objection to improper argument of counsel.*—Where, in reply to an objection to improper remarks made by counsel in an argument to the jury, the court merely states that "these arguments are not evidence," this was not sufficient to remove the prejudice that such remarks were calculated to excite in the minds of the jury.

5. *Damages for wrongful attachment.*—In an action on an attachment bond for the wrongful suing out of the attachment, the fact that the attached property brought its fair value, and that the proceeds of its sale were applied to the payment of the debt of the defendant in

[Hundley *et al.* v. Chadick.]

attachment, cannot be pleaded in mitigation of damages. (*City National Bank v. Jeffries*, 73 Ala. 183, ninth headnote, disapproved.)

6. *Argumentative, confusing, and misleading charges, and charges assuming the existence of facts as to which the evidence is in conflict*, are properly refused.

7. *Estoppel to deny partnership; operation of.*—Where, in an action by C. on an attachment bond made payable to C. & Co., it appears that C. alone did business under the name of C. & Co., and that he had no partner, the fact that both C. and another had estopped themselves, as against persons extending credit to C. & Co., to deny that they were partners, doing business under the firm name, would not affect C.'s right to maintain an action on such bond, if the attachment was wrongful and he was injured thereby.

8. *Complaint in action in United States court; sufficiency of averment of diverse citizenship.*—Where the complaint in an action brought in the Circuit Court of the United States states the names of the plaintiffs and that they are residents and citizens of one state, and describes the defendants as "C. & Co., residents and citizens of" another state, the diverse citizenship of the parties is sufficiently shown.

9. *Presumption as to jurisdiction of Federal Court.*—Where, in an action on an attachment bond given in a suit instituted in a Circuit Court of the United States, it appears that that court assumed and exercised jurisdiction of the person of the defendant in attachment, it will be presumed, in the absence of the record, that, in some legal way, it acquired jurisdiction of his person.

APPEAL from the Circuit Court of Madison.
Tried before the Hon. H. C. SPEAKE.

The opinion sufficiently states the nature of the case and the evidence so far as is necessary to an understanding of the rulings of the court. In submitting the case to the jury, the court, in its oral charge, among other things, instructed them as follows: (1) "That if they found for the plaintiffs the measure of damages was the value of the goods at the time they were taken by the United Stated marshal." (2) "That if William G. Jamar did not authorize the general use of his name as a member of the firm of Chadick & Co., and merely guaranteed the payment of specific bills, that this would not make him a partner, or liable for other bills than those he guaranteed." To each of these portions of the court's oral charge the defendants separately excepted; and they also separately excepted to the court's refusal to give to each of the following written charges which

[Hundley *et al.* v. Chadick.]

were requested by them: (1) "If the jury believe
the evidence in this case they must find for the defend-
ants." (2) "The suit on trial is only against the sure-
ties on the attachment bond given by Rankin & Co. If
there was any abuse of the process of attachment these
defendants are not liable for it. The value of the prop-
erty levied upon is not the measure of damages in this
case, because if an excessive levy was made by the mar-
shal these defendants are not responsible for it." (3)
"In plea No. 2 filed by the defendants they deny that
any attachment bond was executed as alleged, payable
to the plaintiff under the name of Chadick & Co., and
aver that the attachment suit was brought against said
firm. The plaintiff has joined issue on this plea. The
defendants, without objection on the part of the plain-
tiff, have offered oral evidence to prove that said suit
was brought and said attachment was issued against the
firm of Chadick & Co. If the jury find from the evi-
dence that this contention of the defendants is true, and
that said attachment was issued against the said firm of
Chadick & Co., and the bond made payable to them,
their verdict must be for the defendants." (4) "If the
jury believe the evidence in this case, Charles W.
Chadick and William G. Jamar were partners in their
relation to the wholesale merchants of whom Chadick &
Co. obtained credit." (5) "If the jury believe from
the evidence that Charles W. Chadick represented to the
merchants from whom he obtained credit that William
G. Jamar had allowed him the use of his name in order
to obtain credit and was present when Chadick pur-
chased goods, giving his opinion as to the purchase
thereof, then Jamar and Chadick must be deemed as
partners to such extent as would authorize an attach-
ment against their firm property, and plaintiff cannot re-
cover in this cause." (6) "If Charles W. Chadick
was doing business alone as Chadick & Co., he was en-
titled to have one thousand dollars of his property ex-
empt from levy and sale in the case of *Rankin & Co.
v. Chadick & Co.* But if Chadick had a partner, he
could not claim exemptions. The fact that he did not
claim exemptions may be looked to as tending to show
that he had a partner." (7) "If the jury believe from
the evidence that Wm. G. Jamar allowed Chadick the
unlimited use of his name for the purpose of purchasing

37

goods in his mercantile business, this would make Jamar liable as a partner, and the plaintiff Chadick cannot recover in this cause." (8) "If the jury believe from the evidence that W. G. Jamar gave Charles W. Chadick the unlimited use of his name in order to obtain such credit in his business as he, Chadick, might desire, then Jamar would thereby become liable as a partner in the attachment suit, and the verdict must be for the defendants." (9) "The defendants are not confined in their evidence to prove the truth of the ground for the attachment which they alleged in the affidavit in the attachment suit. If the evidence shows the existence at the time the attachment was sued out of any ground which by law authorized the attachment, it is a good defense in this action. Under the law in this state a plaintiff can lawfully sue out an attachment when the defendant is about to remove his property out of the State, so that the plaintiff will probably lose his debt or have to sue for it in another State. If the jury find from the evidence that Chadick & Co. had removed or were about to remove sixty bales of cotton owned by them out of the State of Alabama and into the State of Ohio, and that they had not left in Alabama sufficient property to pay their debts, then this fact would authorize the suit of attachment, and the verdict of the jury should be for the defendants." (10) "An attachment can be lawfully sued out in this State when the defendant is about to remove out of the State. If the jury find from the evidence and under the instructions of the court given in reference to the law of partnership, that Jamar was as to Rankin & Co. a member of the firm of Chadick & Co. and that he was the only solvent member of such firm, then if the jury further find that said Jamar was about to remove out of the State and engage in business in the city of Louisville, Ky., or elsewhere, this fact would authorize the issuance of the attachment, and your verdict would be for the defendant." (11) "The plaintiff cannot recover in his action the value of that part of the goods levied upon which were sold and the proceeds used to pay the debt and interest of the judgment he owed Rankin & Co., for, if he recovered such sum he would recover that amount above actual damages." (12) "If the jury believe from the evidence that there were two attachments levied on the property, one in fa-

[Hundley et al. v. Chadick.]

vor of Rankin & Co. and one in favor of Bransford & Co.,
even if the attachments were wrongfully sued out, the
plaintiff can only recover for that portion of the property
levied upon under the attachment in favor of Rankin &
Co., and the burden of proof is upon the plaintiff to
show that property was levied upon under said attach-
ment in favor of Rankin & Co., and the value thereof."
(13) "If Charles W. Chadick was doing business alone
as Chadick & Co. he was entitled to have one thousand
dollars of his property exempt from the levy and sale in
the case of Rankin & Co.   But if Chadick had a partner,
he could not claim exemptions.  The fact that he did
not claim exemptions may be looked to as tending to
show that he had a partner, and if he had a partner in
interest in the goods levied on, the plaintiff cannot re-
cover damages in this case."   (14)   "The attachment
only authorized the marshal to levy on 'so much' of the
property of the defendants in the attachment suit as
would be sufficient to pay the debt of Rankin & Co. and
the costs, and if the marshal levied on more property·
than was sufficient for this purpose the defendants are
not liable for the property levied upon over this
amount."   (15)   "Even if the jury believe from the
evidence that the attachment was wrongfully sued out,
in estimating the actual damages sustained by the plain-
tiff, if they find the fact to be that the proceeds of the
sale of the goods were credited and applied to the pay-
ments of the judgments rendered in favor of Rankin &
Co. and Bransford & Co. they can only give their verdict
for the value of the goods after deducting the ·amounts
paid on said judgments."   (16)   "The measure of dam-
ages in a case like this is, if plaintiff recover at all—actual
damages or just compensation—he cannot be put in a
better condition than before the attachment.   The value
of the property levied upon is not the measure of his
damages, because the evidence shows that part of the
property was applied to the payment of his debt to
Rankin & Co. being condemned by the court for this pur-
pose."   (17)   "In a suit like this actual damages is all
that can be recovered.   The plaintiff, if entitled to re-
cover at all, is not entitled to recover more than his loss.
Rankin & Co. recovered a judgment against Chadick &
Co. and were legally entitled to apply the proceeds of
the sale of the goods to the payment of the judgment

[Hundley *et al.* v. Chadick.]

for the debt due them. The amount so applied to satisfy a debt of Chadick & Co. cannot now be recovered by him as a part of his actual damages." There were verdict and judgment in favor of the plaintiff, and the defendants appeal.

D. D. SHELBY, for appellants, cited *Rose's. Exrs. v. Boseman*, 41 Ala. 682; *City National Bank v. Jeffries*, 73 Ala. 190; *Earl v. Spooner*, 3 Denio, 246; *Blum v. Stein*, 5 S. W. Rep. 454; *McClellan v. Fallon*, 14 S. W. Rep. 295; *Wolffe v. Minnis*, 74 Ala. 389; *Cross v. State*, 68 Ala. 467; *Railroad Co. v. Bayliss*, 75 Ala. 466; *The Francis*, 1 Gal. 618; *The San Jose Indiano*, 2 Gal. 268; *Ferguson v. King*, 5 La. An. 642; *Masterson v. Phinizy*, 56 Ala. 336; *Watts v. Rice*, 75 Ala. 291; *Amory v. Amory*, 95 U. S. 186.

LAWRENCE COOPER and R. W. WALKER, *contra*.

HARALSON, J.—This was an action on an attachment bond, and sought to recover damages for the wrongful suing out of the attachment. On the trial, the plaintiff offered in evidnece the affidavit, bond, and writ of attachment, with the marshal's return thereon. Against the objection of defendants, the court admitted these papers in evidence. Ordinarily it is proper for the plaintiff, in a suit on attachment bond, to give in evidence the record of the attachment and the proceedings thereon.—*Donnell v. Jones*, 17 Ala. 639; *Dothard v. Sheid*, 69; Ala. 135; *Boggan v. Barnett*, 102 Ala. 400. In these papers, the defendant is styled Chadick & Co., without further description or identification. The objections of defendants were illegality and irrelevancy, and because the papers showed that the attachment suit was against Chadick & Co., and not against Charles W. Chadick, the plaintiff in this suit. In other words that there was a variance.

In the complaint, the plaintiff styles himself, "Charles W. Chadick, heretofore doing business under the firm name and style of Chadick & Company;" and avers that the attachment bond was made by defendants and was payable to him, "under the name of Chadick & Company." If these allegations are true, the individual, Charles W. Chadick, was entitled to sue on that bond. If the suit had been instituted in the name of Charles W.

Chadick merely, and counted on a bond, alleged to have been executed to him, a bond payable to Chadick & Co., in the absence of evidence tending to show the identity of the two payees, would have been inadmissible. But in this case, the identity of Chadick & Co. and Charles W. Chadick, and that he was sued by that name, is not only alleged in the complaint, but the plaintiff introduced evidence to the effect that the debt on which the attachment is based was contracted by him and him alone, and in the name of Chadick & Co.; that he did business in that name; that Chadick & Co. was not a copartnership; that he alone composed that entity, and that the property levied on and sold under the attachment belonged solely to him. Under these circumstances, the attachment papers were properly admitted. The identity of the defendant in attachment is the material inquiry, independent of his name. Moreover, the complaint avers the identity, and the pleas put that question in issue, by denying that the bond was ever executed as alleged, and averring that Chadick & Co. was a firm of individuals, and that plaintiff was not engaged in business under the firm name of Chadick & Company. Thus these were made questions for the determintion of the jury, and the attachment papers were admissible for their enlightenment.—*Zeiner v. Mims*, 96 Ala. 285; *Birmingham Loan &c. v. First Nat. Bk.*, 100 Ala. 249. The affix, ''and company,'' may create a presumption that it is a copartnership, but the presumption is not conclusive. If when these attachment papers were offered and admitted in evidence, they were not by strict rule admissible, because of the absence of proof at the time of the identity of Charles W. Chadick and Chadick & Co., that irregularity or error was cured by the introduction afterwards of such proof. They were probably admitted in anticipation of and subject to such proof being made.

The action was brought to recover damages for a mere wrongful attachment. The complaint does not aver that the attachment was vexatious, nor does it claim any punitive damages. The transcript shows that counsel for the plaintiff, in his argument to the jury, stated that ''the action of defendants in this case showed vexatious, willful and malicious persecution of the plaintiff; that his character had been assailed, and that the jury ought

to award extraordinary damages, for the damage to his character." To this the defendants objected, and asked the court to prevent such argument. "The crourt declined to interfere with this line of argument, to which the defendants again excepted. and thereupon said counsel continued his line of argument upon this subject of vexatious and malicious suing out of the attachment." In this case the most that plaintiff could recover was the actual injury sustained. In no event could he recover punitive damages. And whether or not the attachment was vexatious or malicious was foreign to the issue. The question was whether or not the attachment was wrongful. If wrongful, the motives of the plaintiffs in attachment, whether good or bad, could not affect the right of recovery. The argument was well calculated to impress the jury that they could inflict punishment, and the refusal of the court to interfere doubtless tended to emphasize this impression. The court erred in allowing the argument.—*Dollar v. State*, 99 Ala. 236 ; *Wollfe v. Minnis*, 74 Ala. 389 ; *Cross v. State*, 68 Ala. 467 ; *Sullivan v. State*, 66 Ala. 48 ; *Railroad v. Bayliss*, 75 Ala. 466.

3. Witnesses for the defendants, in their depositions, stated that Charles W. Chadick and W. G. Jamar composed the firm of Chadick & Co.; that the credit of that firm was based principally on the fact that said Jamar was a partner, &c., and that they derived this information from P. S. Hollins and others. In his argument to the jury plaintiff's counsel said : "And it is remarkable that they did not put P. S. Hollins on the stand when he could be gotten in the court room in fifteen minutes." Whereupon another of plaintiff's counsel said, "Yes, I expect you will find him registered now at McGee's hotel in the city." On objection and exception to such arguments, the court stated to the jury.—"These arguments are not evidence." There was no evidence of where Hollins was at that time. These remarks of counsel were not only "not evidence," but they were not legitimate, and should not have been allowed. What the court replied to the objection raised by counsel was not sufficient to remove the prejudice that such remarks were calculated to excite in the minds of the jury.— *Florence Cotton & Iron Co. v. Field*, 104 Ala. 471; *Bates v.*

*Morris*, 101 Ala. 282 ; *Dollar v. The State*, 99 Ala. 236 ; *Haynes v. McRea*, 101 Ala 319 ; *Pollock v. Harmon*, 94 Ala. 421. There are cases where one's failure to introduce certain evidence is an implication against him, but this is not one of them. If Hollins was in Huntsville, he was equally in the reach each party; and it was no more incumbent upon the one to call him for proof of the affirmative, than on the other, to prove the negative.

4. To justify an attachment there must be a debt due or to become due, and one of the enumerated statutory grounds must exist. If either of these be wanting in fact,—no matter how sincerely the attaching creditor may believe it to exist,—then the attachment was wrongful, but, without more, it is only wrongful. In such case, the measure of recovery in a suit on the bond is actual injury sustained.—*City Nat. Bak v. Jeffries*, 73 Ala. 190; *Pollock v. Gantt*, 69 Ala. 374 ; *McLane v. McTigh*, 89 Ala. 411 ; *Durr v. Jackson*, 59 Ala. 203 ; *Gamble v. Hammerwell*, 44 Ala. 336. Actual damages do not include "wounded feelings," and the like ; but are such as one has sustained in his property,—his pecuniary loss. If one's goods are taken from him under a wrongful attachment, and not returned, the measure of his recovery in a suit on the attachment bond, so far as the goods taken are concerned, is the value of the goods at time they were so taken from him, with interest to the time of the trial. And he may also recover for any other actual damages,—such as reasonable attorney's fees incurred in defending the attachment suit, loss of credit, &c.,—he may have sustained. In no event, of course, can a recovery be had for more than the amount of the attachment bond.—*Fields v. Williams*, 91 Ala. 505.

It has been held by us that if a defendant, as a mere trespasser, seizes personal property in the possession of and claimed by another, and has *himself* applied the property seized by him to the plaintiff's use, but without authority, and without the owner's consent, express or implied, this fact is not available to him in mitigation of damages, when sued in trespass by the owner for taking the property, although the use to which the property was applied was the satisfaction of a debt due by the owner to a third person.—*Bird v. Womack*, 69 Ala. 392. The only difference between the taking of the goods of

the owner of them by a mere trespasser, and their taking under an attachment wrongfully sued out is, that the taking in the latter instance has the apparent justification of a taking under legal process. The consequences of the taking are the same, in either case, to the owner. If the attachment under which they are taken is sued out without the existence of any legal ground or warrant, such as upon which the statute authorizes an attachment to be issued, the plaintiff in attachment is stripped of this justification, and stands, in the eye of the law, as a mere naked trespasser without excuse for his wrong-doing, and is liable to the same damages in the one as in the other case. It is axiomatic that men cannot be deprived of their property except by due process of law ; and, where no grounds for an attachment exist against a debtor, his creditor has no more right, by suing out such a process on false grounds, to deprive him of its possession and use, together with all the incidents and privileges of ownership, than he has to accomplish the same ends by a bare trespass. In the absence of statutory grounds for the process, the plaintiff and his sureties on the attachment bond are just as guilty of a wrongful invasion of the rights of the owner of the property taken, and are liable to the same extent, as if they had gone without any semblance of legal authority and taken the property by force. The bond which the law requires for suing out an attachment is intended as an indemnity or security to the owner of the property attached against an abuse of the process, and accords to him the same measure of relief, against the principal and his sureties, in case it was wrongfully sued out, as he would have had or been entitled to if the taking had been without pretense of legal authority. A bare trespasser cannot plead, when sued by the owner of the property for the trespass, that he applied the property or the proceeds of its sale to the plaintiff's benefit, or to pay his debts, if such disposition of it has been without the plaintiff's consent. As was well said by this court on this subject in *Sayre v. Elyton Land Co.*, 73 Ala. 103 : "If upon the theory, if no wrong is done by a sale of property in violation of law, when the proceeds of sale are applied to pay a just debt, parties were allowed to wield the process of the courts in their own favor, exacting the measure of justice which they claimed, how-

[Hundley *et al.* v. Chadick.]

ever rightfully, it is manifest oppression and abuse would soon follow, and private rights would be subverted.—*Sherman v. Boyce*, 15 Johns. 142.''—*Hurrison v. McCrarey*, 37 Ala. 690 ; *Wannamaker v. Bowers*, 37 Md. 58 ; 1 Suth. on Dam. § 157. To hold, in a case of a suit on the attachment bond, counting upon the wrongful suing out of an attachment, that the measure of damages is the value of the property taken, but only that, less the amount of the attaching creditor's demand, would be to offer inducement for the unlawful substitution, and to make it answer the ends of a most unwarranted trespass, to secure a preference of payment over other creditors, and to deprive the debtor of his property otherwise than by due process of law. We are aware that there are respectable authorities to the contrary of the conclusion we announce, but we decline to follow them. In one of our own cases, that of the *City Nat. Bank v. Jeffries*, 73 Ala. 183, the expression occurs, as embodied in the 9th head-note : ''If it be shown that the property attached has yielded its full value, this may be considered in mitigation of damages. It can go no further.'' This is relied on to support the proposition that if the property brought its fair value, the proceeds of the sale, applied to the payment of the defendant's debt, for which judgment was rendered in the case, may be pleaded in mitigation of the damages for the wrongful suing out of the attachment. This expression was used without any comment, argument or citation of authority for its support ; and when reference is had to the charge in connection with which it was employed, it bears the construction contended for by appellants. It was possibly made without due consideration, and we disapprove it, as being incorrect in principle.

5. That part of the court's charge which instructed the jury that, if they found for the plaintiff, the measure of damage was the value of the goods at the time they were taken, was, under the principles we have announced, free from error, of which defendant can complain. There was some evidence tending to show that the levy was excessive ; and the evidence, on the other hand, tended to show that there was no excess of goods levied on, to satisfy plaintiff's demand. If the defendants apprehended that the charge was calculated to mislead the jury, and prejudice them as to a consideration

[Hundley *et al.* v. Chadick.]

of any damage which might have arisen from an excessive levy, and they desired to raise that question, they might have done so by a proper request for instructions to the jury on the subject. Charge No. 2 requested by defendants was an attempt in this direction, but it was properly refused as being argumentative, and calculated to confuse and mislead. Nor was there any error in the other part of the court's general charge, excepted to by defendants. Charge No. 3 was properly refused. It tended to mislead and unduly impress the jury that Chadick & Co. was composed of more persons than one. The evidence did not show that, as between themselves, Jamar was a partner of Chadick. They each denied the fact of such a relation between themselves. The most the evidence shows in this connection is, that Jamar became the security of Chadick in the purchase of goods, and all that could possibly be claimed in any phase of the evidence was that Jamar might be made liable as a partner in favor of persons, if any, who dealt with Chadick & Co. on the faith of Jamar holding himself out as a partner, which fact there was evidence tending to show, but if that were true, it would not entitle Jamar to sue on this attachment bond, for he denied being a partner. And if Chadick, even, held out that Chadick & Co. was a copartnership, composed of himself and Jamar, and on the faith of it obtained credit, in a suit by creditors against Chadick & Co., growing out of credits so obtained, he would be estopped to deny the partnership relation, although it may never in fact have existed. But this estoppel could not be used by the creditor as a means of perpetrating a tort or a wrongful act. The principle is that estoppels are protective only, limited to saving harmless or making whole the person in whose favor they arise, and they should not in any case be made instruments of gain or profit. If Chadick & Co. was not in fact a partnership, but merely another designation of Charles W. Chadick, and the attachment was wrongful, and he sustained injury resulting therefrom, on showing these facts he has a right of action on the bond. To hold otherwise would deny Charles W. Chadick any right of action on the bond for the wrong, if any, done him by suing out the attachment.—*Adler v. Pin*, 80 Ala. 351; *Lindsay v. Cooper*, 94

Ala. 183–4. From what has been said, the vice of
charges 4, 5 and 7 will appear. They seek to place the
real issue on a wrong basis. The question of Jamar's
liability would arise only in a proceeding seeking to
charge him. From all hypothesized in these charges,
defendants might be liable to plaintiff for the wrongful
attachment. Charges 6 and 13, wrong in principle, are
at best mere arguments. Enough has been said to show
that No. 17 was an improper request. No. 9 is faulty
in assuming as a ground of attachment, that plaintiff
*had* removed property out of the State,—a ground not
specified in the Code, section 2930, 5. And also, on the
further ground, that it assumes that Chadick & Co.
was composed of more individuals than one. Nos. 11
and 16 each conclude with an argument; and more than
that, as has been fully shown, they are unsound in prin-
ciple, as is No. 15, which is further faulty, in assuming
that any part of the proceeds of the sale of the goods
was applied to the Bransford & Co. judgment. They
were all applied, as the evidence tends, without contra-
diction, to show, to the Rankin & Co. judgment. No
minute entry of the judgment that was rendered in the
case of Rankin & Co. against Chadick & Co. appears in
the transcript, and it is assumed merely, that the goods
levied on were condemned by the order of the court to
the payment of that judgment. The transcript is in an
unsatisfactory condition to show what was done. The
Rankin & Co. attachment was levied, Feb. 21, 1894, on
the entire stock of goods of Chadick & Co. There was
a sale of a part of this stock at Bean Rock, where the
goods were levied on, the proceeds of which amounted
to $961.03. The remainder of the stock appears to have
been removed by the marshal to Huntsville, and there
sold, and, from a statement of his introduced in evi-
dence, it appears that the proceeds of the sale of the
entire stock amounted to $1,168.63, making the proceeds
of the part of the goods sold at Huntsville, $207.60.
Bransford & Co., it seems, sued out an attachment in
said U. S. Court, against Chadick & Co., on the 25th of
Feb'y, 1884, which the evidence tends to show was levied
on the same goods, and that a part of the goods was
sold under this attachment, as well as under Rankin &
Co's. The transcript sets out the minute entry of a
judgment in that case, showing that a judgment was

[Hundley *et al.* v. Chadick.]

rendered in it for $561.62, but on what date does not appear, neither does the writ of attachment, the levy nor the marshal's return appear. It is shown that the proceeds of all the goods sold, whether under the one or the other or both of the attachments, amounted to no more than enough to pay the Rankin & Co. judgment, costs and expenses of sale, and were so applied. Indeed they amounted to a sum not quite large enough to cover all the expenses. Charge No. 12, therefore, based on the idea that the Bransford & Co. attachment affected the measure of recovery, was also properly refused.

6. We think there is nothing in the objection that the attachment papers do not show diverse citizenship. The complaint in attachment described the plaintiffs as "David R. Rankin and Wm. P. Rankin, partners doing business under the firm name and style of Rankin & Company, and who are residents and citizens of the city of Nashville, State of Tennessee." And the defendants are therein described as "Chadick & Co., residents and citizens of the State of Alabama, in said Northern District of Alabama, and transacting business under the common name of Chadick & Co." Thus, not only the residence but the personal citizenship of the parties is alleged.— *Amory v. Amory*, 95 U. S. 186 is not inconsistent with these views. In that case the averment was, "the plaintiffs, *as such executors*, are citizens of the State of New York." And the court said : "Where the jurisdiction of the courts of the United States depends upon the citizenship of the parties, it has reference to the parties *as persons*."

7. It is also urged by appellants' counsel that an attachment suit can not be maintained in the circuit court of the United States without the court's acquiring jurisdiction of the person of the defendant by service of process. This question might arise if we had the entire record of the attachment suit before us. In its absence, for all we know, service of process may have been had, or defendant in attachment may have waived process by appearing and defending the suit. That court had jurisdiction of the subject matter. It assumed and exercised jurisdiction of the person, and in the absence of the record we presume that, in some legal way, it acquired jurisdiction of the person. The affirmative charge for the defendants was properly refused. As to

the necessity for the service of process, see U. S. Revised Stat., section 915; Code of 1876, section 2924, 3252, 3323-4-5; *Hadley v. Byers*, 58 Ala. 139; 27 Am. & Eng. Encyc. of Law, 604; *Flournoy & Epping v. Lyon & Co.*, 70 Ala. 312.

The other errors assigned, which we have not considered, will be treated as waived, since they were not insisted on in argument.

For the errors pointed out, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.