# INSULAR DOCK COMPANY, Plff.,

*v.*

# P. J. CARLIN CONSTRUCTION COMPANY AND SAN JUAN HARBOR BOARD, Dfts.

---

San Juan, Equity, No. 955.

APPLICATION FOR PRELIMINARY INJUNCTION.

Injunction—Proper and Necessary Parties.

1. In an application for a preliminary injunction against a harbor commission and the contractor with whom the commission had contracted for the erection of a bulkhead, all the necessary parties are present, and it is not essential that the local government creating the commission be joined.

Injunction—Laches.

2. The failure to protest against the erection of a bulkhead alleged to infringe the plaintiff's property rights in his pier will not forfeit the right to an injunction if suit is brought when the construction first invades the plaintiff's property, although the construction had been in operation for a long time in other parts, especially where a letter two years before was shown to have been written requesting information as to the proposed course of construction.

Wharves and Piers—Successive Permits.

3. Where the plaintiff's pier was erected in 1906 under a permit from the Secretary of War of the United States and under a franchise from the Executive Council of Porto Rico to use the approaches to the shore and 75 feet on each side of the pier, the subsequent

---

NOTE.—As to effect of establishment of harbor lines on right in existing wharves, see note in 40 L.R.A. 644.

Insular Dock Co. v. P. J. Carlin Constr. Co.

establishment by the Secretary of War of a bulkhead line 40 feet further out into the harbor than the original shore line, and the grant to the government of Porto Rico of a permit to erect a bulkhead along that line, does not enable the government, acting through a harbor board and a contractor, to erect the bulkhead within 75 feet of the plaintiff's pier, since that would infringe the proprietary rights of the plaintiff, and the permit of the Secretary of War to the local government will not be construed as giving this right.

Preliminary Injunction—Relative Inconvenience.

4.    Although the issue of a preliminary injunction is discretionary within certain limits and dependent upon the balance of convenience and the public interest, where the injury to the plaintiff would be great and the injury to the defendant not insurmountable, the preliminary injunction should be granted upon the filing of a bond to cover damages to the defendants if the order is subsequently reversed.

Opinion filed May 14, 1915.

———

*Mr. H. G. Molina* solicitor for plaintiff.

*Mr. Chas. Hartzell* solicitor for defendant Carlin Construction Company.

*Mr. H. L. Kern,* Attorney General, for San Juan Harbor Board.

Bill in this cause was filed May 3, 1915, and, after alleging diversity of citizenship of parties, avers that on August 13, 1906, an ordinance was passed by the Executive Council of Porto Rico granting to Carlos Conde Casariego a franchise, whose provisions read as follows:—

"Section 1. That there is hereby granted to Carlos Conde Casariego and to his heirs, successors and assigns, the right and

privilege to occupy and use one hundred and twenty-five (125) feet of the shore front in the harbor of San Juan for the purpose of constructing, maintaining, and operating a public pier; and also the right to use such portions of the harbor front as may be necessary for the proper use of said pier, not exceeding seventy-five (75) feet on each side of the same."

"Section 3. That the pier to be built by the grantee shall be known as pier No. 2 and shall be so situated that one hundred and fifty (150) feet shall intervene between its western side and the eastern side of pier No. 1 owned and occupied by the New York & Porto Rico Steamship Company, and shall not exceed one hundred and twenty-five (125) feet in width. The grantee may obtain authorization from the Secretary of War to extend the shore front into the water at the point designated for the construction of the pier, by reclaiming the land in front of such shore front, but the government of Porto Rico hereby expressly reserves its ownership in and to the land so reclaimed, in accordance with § 13 of the act of Congress approved April 12, 1900, entitled, 'An Act Temporarily to Provide Revenues and a Civil Government for Porto Rico, and for Other Purposes.' "

"Section 4. Before the construction of the pier herein provided for shall be commenced, the grantee, through the Commissioner of the Interior, shall submit plans to the Executive Council for its approval, showing the exact location of the pier and other necessary details regarding the contemplated use of the shore front in connection with the pier hereby authorized to be built."

"Section 5. That the term 'grantee' as herein used shall be held to extend to and include Carlos Conde Casariego, his heirs, successors and assigns, and in case of the transfer, either by his own act or by act of law, of the property and property rights

acquired hereunder, the purchaser and assignee shall be bound by all the terms hereof of every name and nature. But it is expressly understood and agreed that this franchise shall not be transferred or assigned without the specific consent of the Executive Council."

"Section 6. This franchise shall be accepted by the grantee in writing, filed with the Executive Council within thirty days after its approval by the governor of Porto Rico; and within thirty days after the filing of such acceptance the plans and application for the construction of said pier shall be submitted to the Secretary of War under the act of Congress approved June 11, 1906, hereinafter mentioned. The actual work of constructing said pier shall be commenced and completed and the pier ready for use within the periods fixed by the Secretary of War in his authorization."

"Section 8. The duration of this franchise shall be ninety (90) years from the date of its approval by the governor of Porto Rico."

The franchise was approved and was accepted by the grantee. That on November 28, 1906, the Secretary of War of the United States granted said Carlos Conde Casariego a permit for the construction and maintenance of the above pier, upon conditions, amongst which are:

"1. That this authorization shall be limited to a period of ninety (90) years from August 31, 1906; and shall be subject to alteration, amendment, or repeal by Congress.

"2. That the government of the United States of America, or, with the approval of the Secretary of War, the government of Porto Rico, shall have the right at any time after the expiration of thirty (30) years from the date of this authorization,

Insular Dock Co. v. P. J. Carlin Constr. Co.

and after three (3) months' notice, to take said pier from the owner thereof, upon paying the value of the same at the time it shall be so taken; said value to be determined in the manner provided in said act of Congress."

This permit was accepted, and that Carlos Conde Casariego in the same year transferred his right to the Insular Dock Company, and that the pier was built, to the satisfaction of the War Department, from the existing bulkhead line, then defined by a wall of masonry. That the work was completed in 1908 at an expense of $228,000, and consisted of a substantial pier 400 feet long by 125 feet wide, on it at the shore end being placed a substantial office building two stories high. That said pier is a public pier, and that plaintiff is deriving a considerable profit from the freight loaded and discharged over it.

That the defendant P. J. Carlin Construction Company is engaged in the construction of a new bulkhead, which is intended to cross the pier of plaintiff at a point between 40 and 50 feet from the present bulkhead line at the shore end, and is now engaged in driving concrete piles which will deprive the plaintiff of access and egress to and from that portion of its pier, interfering with the use of said property and damaging it, depreciating the value of the property and the franchise, and that plaintiff will suffer irrevocable loss without adequate compensation at law. That said damage will be in excess of $100,000, wherefore an injunction is prayed. The bill is sworn to.

Thereupon, upon application of complainant, an order was issued to defendant to show cause why a temporary injunction should not be granted, and upon the return day thereof, May 6, the defendant filed an answer stating that it was doing the work complained of under a contract with the harbor board of San

Juan, and that the construction complained of was under an act of Porto Rico of March 7, 1912, providing for the construction of a permanent bulkhead along a harbor line approved by the Secretary of War. That said improvement was by said act to be carried out under the San Juan Harbor Board, composed of the Commissioner of the Interior, the *alcalde* of San Juan, and three merchants of San Juan appointed by the governor of Porto Rico. That said board entered into a contract with the defendant to carry out said proposed improvement, which involved an expenditure of more than $300,000. That the said change of harbor line will extend up to the dock of the plaintiff 40 to 45 feet in front of the present bulkhead, but will not cross the said dock. That defendant is required under heavy penalty to complete said wall on or before the 2d day of July, and that stoppage of the work will cause irreparable damage to the defendant. The defendant suggested that it was not the real party in interest, but it was the agent of the said harbor board, and that the controversy should be between the complainant and said public authorities.

The court decided that the harbor board should be notified, and that body on May 10. filed a petition for intervention, assuming responsibility for the work, admitting most of the facts of the bill, but denying that the pier was constructed legally, and that the proposed work invades the legal and equitable rights of the plaintiff, alleging that the work being done is in accordance with the legislative assembly of Porto Rico of March 7, 1912, and in pursuance of the permit issued by the Secretary of War of the United States July 21, 1913. That the bulkhead is being constructed on land which is the property of the United States. A copy of the permit of the Secretary of War is at-

FEDERAL REPORTS. 41

Insular Dock Co. v. P. J. Carlin Constr. Co.

tached, and the contract and plans and specifications with the defendant Carlin Construction Company are also made exhibits. That the bulkhead is to be constructed up to the pier without touching it. That the complainant is estopped from any right to restrain the construction of this bulkhead, by delaying to assert its rights. That the intervener has no information as to damage to complainant, but that delay in construction of the bulkhead will be incalculable and irreparable loss to the public and to the intervener in connection with its contract with the Carlin Construction Company. That it is essential to complete the work at this point, because at no other point does the bulkhead front on water of sufficient depth to float vessels of any size, and that the construction in other parts of the harbor where there is deep water would meet with the same difficulties as in the present bill.

The matter was fully argued by counsel and submitted upon affidavits and exhibits.

HAMILTON, Judge, delivered the following opinion:

This is an application for a preliminary injunction upon bill and answers, supported on each side by affidavits and documentary evidence.

1. The grant or refusal of an injunction has an important effect upon the parties concerned. The court must, therefore, be sure that it has before it all parties in interest. In the case at bar this has been effected by preliminary proceedings. The application is by the complainant claiming certain rights to what is known as the insular dock, or pier No. 2, and adjacent waters, at San Juan, beginning at an old bulkhead, for protec-

tion against alleged invasion thereof by the erection of a bulk-head striking the pier further out into the waters of the harbor. This new bulkhead is being erected by the defendant P. J. Carlin Construction Company, which, however, claims no property rights and is doing the work as the contractor of the San Juan Harbor Board. Both the Carlin Construction Company and the harbor board are made parties defendant to this action. On argument, mention was made of the people of Porto Rico as having an interest. In some ways they are to be considered a sovereignty exempt from suit. (Porto Rico v. Rosaly y Castillo, 227 U. S. 270, 57 L. ed. 507, 33 Sup. Ct. Rep. 352.) This may be waived. (Porto Rico v. Ramos, 232 U. S. 627, 58 L. ed. 763, 34 Sup. Ct. Rep. 461.) There is no waiver in the case at bar, unless it can be implied from the petition of the harbor board to be made a party defendant. No official, however, is above the law (United States v. Lee, 106 U. S. 196, 27 L. ed. 171, 1 Sup. Ct. Rep. 240), and as sovereignties must act through officials and a void law protects no one, a way can generally be found to protect any rights that are threatened. There is, however, a boundary line which cannot be passed. Murray v. Wilson Distilling Co. 213 U. S. 151, 53 L. ed. 742, 29 Sup. Ct. Rep. 458; Lankford v. Platte Iron Works Co. 235 U. S. 461, 59 L. ed. 316, 35 Sup. Ct. Rep. 173. But this line is not important in the case at bar. The defendant the harbor board of San Juan was created by the act of the legislative assembly of Porto Rico approved March 7, 1912 (Acts 1912, pp. 80,83). This act provided for the construction of a permanent bulkhead in San Juan harbor and suitable access to said water front, and empowered the board to consider and dispose of all matters in reference to harbor or shore improve-

ments. (Sections 10, 11, and 12 of said act.) The board is given power to "lay out and establish or change such streets adjacent to or in the vicinity of these improvements and that may in its opinion be required for the convenience of the public. The Executive Council is hereby authorized to declare of public utility all or any part of such private property as may be required for this purpose, when in the opinion of the board such action may be necessary." (Section 14 of said act.) Sales of property in the vicinity of these improvements is authorized as required for the convenience of shipping. (Section 15.) It would seem, therefore, that the San Juan Harbor Board is the only Porto Rican agency interested in the proposed improvements. So that, it appears, the local government has no interest except as represented by the harbor board, and the public at large, if it has an interest, is sufficiently represented by this board. It would seem, therefore, that all parties are before the court who are affected by the matter set up by the bill of complaint.

2. The present application is for a restraining order and for the resulting preliminary injunction, or what is sometimes called an injunction *pendente lite*. A decision upon this application does not necessarily decide the merits of the case. It merely decides what is or is not to be done before the merits are passed on. If granted, it is in order to preserve the *status quo*. The views of the court are subject to change upon further argument and examination of the law. It is to be remembered that the facts may, on such an application, be perfectly presented, and that what the court does at the beginning of the case may be entirely different from what it will do after the facts are fully developed by the evidence. On the other hand, where the facts are largely documentary and the case cannot be materially

changed by evidence, it may well be that the preliminary injunction will ultimately be made final.

3. Another preliminary matter is set up by the defendant the harbor board. This defendant alleges that the motion should not be granted because the complainant has stood by and seen the expenditure of many thousands of dollars under this contract, so that its action now is so late as to be inequitable. In other words, this defendant alleges that the complainant is estopped by its previous inaction. There is no doubt that this principle can often be invoked. The classical example is where one having interest in land knowingly permits an innocent party under a mistake as to his title to expend large sums of money in the erection of improvements upon the land in question. Under such circumstances the landowner will be held estopped from asserting interest adverse to the innocent party. Such equitable estoppel shuts the mouth of one misrepresenting facts, even though he gains nothing himself. David v. Shepard, 40 Ala. 587. This principle protects the party who is influenced by such acts, but it is not to be made an instrument of gain for an outsider. Hundley v. Chadick, 109 Ala. 586, 19 So. 845. It would not seem, however, that this principle would apply in the case at bar. The interest claimed by the complainant is limited to 75 feet on each side of the pier, and only now has the contractor begun placing the proposed improvement within this limit. It is true that the complainant must have known of the work at other points and probably of the whole general plan, but he had no interest in preventing the work at any point except that where he has interfered. Morever, a letter has been placed in evidence showing that as far back as July, 1914, the complainant made an inquiry of the harbor board on this very subject, asking what

the plan was so far as related to the rights of the complainant, and it is shown that this defendant made no reply to the inquiry. It does not appear, therefore, that the complainant is estopped from making this application for injunction.

4. The main question in the case, therefore, now comes up as to whether the complainant has a right which should be protected. It is important to see exactly what is involved. In the first place this is not a suit by a riparian owner seeking to prevent infringement of his rights appurtenant to the fast land. There has been no discussion as to the right of such an owner in territory derived from Spain under the treaty of Paris, nor is it important at present. In Porto Rico, as elsewhere, the United States takes the title to land and water in new territory in trust for the future state. Weber v. State Harbor, 18 Wall. 65, 21 L. ed. 801. While its form may be different, there is no doubt that the owner of the fast land in Porto Rico has, under ordinary circumstances, substantially the same right of access to navigable water in front that exists in the rest of the United States. This is a valuable right and has given rise to many decisions. Yates v. Milwaukee, 10 Wall. 497, 19 L. ed. 984; Shively v. Bowlby, 152 U. S. 1, 38 L. ed. 331, 14 Sup. Ct. Rep. 548. See notes in 8 L.R.A. 89; 34 L.R.A.(N.S.) 424; and 42 L.R.A. 161. Whatever may be the future legislation of Congress in regard to Porto Rico, for the past and the present at all events the shore lands are governed by the general laws heretofore in force, with such modifications as are found in act of June 11, 1906, empowering the Secretary of War to authorize the construction of wharves, piers, and the like on lands underlying harbor areas in Porto Rico. 34 Stat. at L. 234, chap. 3075, Comp. Stat. 1913, § 3799. The two conflicting claims in-

Insular Dock Co. v. P. J. Carlin Constr. Co.

volved in this suit seem both to be derived from the latter act. The right claimed by the complainant is to a pier projecting out to navigable water, and to a water space of 75 feet on each side of the pier. The claim is that the right of access is interfered with to this water space, but the right accrues to the complainant not as a riparian owner, but as a licensee of the local government.

5. Furthermore, it is to be noted that this is not a question of the right of the government to establish a harbor line. One of the defendants is called the harbor board, but at least for the purposes of this suit it is acting not under any supposed right to fix a harbor line, but under a claim to erect a bulkhead far inside of what is practically the harbor line. A harbor line, as ordinarily used, is one fixed by the proper government authorities, and in Porto Rico this must be the United States or its Secretary of War, beyond which piers shall not extend from the shore. In this case there is no evidence that such a line is involved. Litigation on this point generally arises where a wharf or pier extends too far out. Such was the case of Philadelphia Co. v. Stimson, 223 U. S. 605, 56 L. ed. 570, 32 Sup. Ct. Rep. 340. The Secretary of War in such cases acts under the act of Congress of September 19, 1890, 26 Stat. at L. 455, chap. 907, and under the amendment thereto of March 3, 1899, 30 Stat. at L. 1151, chap. 425. Such control of harbor lines is a plenary power of Congress under the clause as to regulation of commerce, which has been held in Gibbons v. Ogden, 9 Wheat. 1, 6 L. ed. 23 (Marshall), to be limited only by the needs of navigation itself. Congress has seen fit to delegate this power to the Secretary of War, and it has been held repeatedly that this is not a delegation of legislative, but the giving of administrative,

FEDERAL REPORTS. 47

Insular Dock Co. v. P. J. Carlin Constr. Co.

power, of course subject to the right of parties injured to appeal to the courts in all cases. Greenleaf-Johnson Lumber Co. v. Garrison, 237 U. S. 251, 59 L. ed. 939, 35 Sup. Ct. Rep. 551, April 12, 1915. This is in the nature of police power, and is not exhausted by its exercise at one time. It is within the discretion of the Secretary afterwards to vary the lines to meet new conditions. His power is not exhausted by its exercise in the first instance. Philadelphia v. Stimson, 223 U. S. 638 supra; Monongahela Bridge Co. v. United States, 216 U. S. 177, 54 L. ed. 435, 30 Sup. Ct. Rep. 356; Prosser v. Northern P. R. Co. 152 U. S. 59, 38 L. ed. 352, 14 Sup. Ct. Rep. 528.

A similar exercise of power by Congress is found in the act of March 3, 1899, § 18, 30 Stat. at L. 1153, chap. 425, Comp. Stat. 1913, § 9970. This authorizes the Secretary of War to require the removal of bridges which are obstructions to navigation; and it seems to be like the police power of the states. This, also, is not a delegation of legislative or judicial power to an executive officer, nor is it a taking of property for public use without compensation. Union Bridge Co. v. United States, 204 U. S. 364, 51 L. ed. 523, 27 Sup. Ct. Rep. 367.

6. From a consideration of what this case does not cover, it is easier to determine what is involved. The claim of the plaintiff is derived from a grant or permit by the Secretary of War of the United States dated November 28, 1906, to the predecessor of the plaintiff, upon its face purporting to be under the act of Congress approved June 11, 1906, 34 Stat. at L. 234, chap. 3075, and deciding that the grantee had been granted a franchise for ninety years from August 31, 1906, to occupy and use 125 feet of the shore front for the purpose of a public pier, and thereupon granting to said applicant authority to construct,

maintain, and operate the pier at the location shown on certain plans, with certain restrictions and conditions, to wit: (1) A limitation of ninety years, "subject to alteration, amendment, or repeal by Congress;" (2) the United States, or with the approval of the Secretary of War the government of Porto Rico, shall have the right after thirty years to take the pier at its value; (3) wharfage fees shall be subject to regulation by the Secretary of War; (4) United States vessels in emergency or war shall have the right to free use of the pier; (5) necessary dredging shall be done; (6) construction to be commenced within one year and completed within three years; (7) expenditure accounts shall be filed with the United States engineer; (8) the pier shall not be conveyed or the authorization assigned without the consent of the Secretary of War, and in no case to a competitor. On the other hand, the right of the defendants is derived from a similar permit from the Secretary of War, dated July 24, 1913, and purports to be under the same act of Congress, the difference being that the first was for the construction and operation of a public pier by a private corporation, and the second gives authority to the government of Porto Rico to construct a bulkhead under certain approved plans and specifications, subject to all of the pertinent provisions of said act of Congress and to certain further conditions as to ownership of soil, details of construction, dredging, wharfage fees, and limitation to ninety years from August 1, 1913. The "necessary dredging described in § 3 (d) of said act of June 11, 1906, shall be understood to mean a sufficient depth around the structure for vessels of a draught regularly operating in the harbor."

The answers aver that there is no present intention of carrying the bulkhead through the pier or building of the complain-

Insular Dock Co. v. P. J. Carlin Constr. Co.

ant, so that the question narrows itself to the matter of cutting off the adjoining water strip of 75 feet in width on each side of the shore end of the pier for a distance of about 40 feet. In other words, if completed, the plan will make 40 feet of the existing pier and building a part of the mainland, instead of having it, as at present, face navigable water on both sides.

The contest, therefore, is not between a citizen and the government or Secretary of War of the United States, but between the government of Porto Rico as bulkhead licensee and the proprietors of a pier as to the value of their respective grants from the Secretary of War. It is true that the harbor board is in some sense a representative of the government of Porto Rico, but the government of Porto Rico received this grant from the Secretary of War on the same terms and under practically the same conditions that the complainant had received its grant seven years before, and the bulkhead grant is substantially in the shape in which the Secretary of War could have made a similar grant to any private riparian owner. The grant in its terms is not to the people of Porto Rico, but the government of Porto Rico. In other words, the defendant harbor board in this case would seem to be asserting rights which come to the authorities not so much in their governmental capacity as in their corporate capacity. The contest is between two grantees of the Secretary of War, for these purposes standing on the same footing, except as to time. It is true that it is provided in the complainant's grant that the United States, or with assent and approval of the Secretary of War, the government of Porto Rico, may take the pier from the owner, but it is expressly provided that this shall only be after the pier owner has had the use of his grant for thirty years, and even then upon paying the

VIII. Porto Rico—4.

Insular Dock Co. v. P. J. Carlin Constr. Co.

value, to be determined according to law. But this time has not expired, and this provision need not be taken into account.

If the contention of the defendant harbor board is correct, a later grant of the Secretary of War must prevail over an earlier grant of the same official. This can only be if the first grant has been forfeited, which is not contended, or is revocable. On its face the grant to the complainant is not revocable for thirty years at least, and there is nothing to show that this limitation made by the Secretary of War upon his own power is illegal. It may well be that, unless the complainant's predecessor had an assurance of such a fixed term for the enjoyment of this franchise, he would never have erected the pier, and that the public would be without the benefit of a public pier up to the present. Moreover, it would seem that if the contention of the defendant is correct the Secretary of War can to-morrow make another grant of a bulkhead right still further out into the harbor, and thus cut off the defendant harbor board from access to navigable water. If this could not be permitted, neither can such a grant be permitted to affect the complainant. The American government is a government of laws, and not of persons. The Secretary of War must be held, when he made the original grant, to have exhausted his power; for the case at bar is an entirely different one from removal of obstructions to navigation under the act of 1899 above considered. Any other construction would be saying that the Secretary of War could agree to one thing to-day and another thing to-morrow, no matter who is injured. This is not true. The authorization is subject to alteration, amendment, or repeal only by Congress, and there is no later conflicting act of Congress set out in this case.

7. It is not necessary to the case, at least at present, to de-

termine the exact nature of the authorization or franchise granted to the complainant by the Secretary of War and by the Executive Council of Porto Rico. It may be that it amounts to a franchise in the sense of the case of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. ed. 629 (Marshall). That is to say, the sovereign, the United States, through its Secretary of War, made a certain grant to the complainant, and while it is true there was no consideration paid to the sovereign, the grantee acted upon the permit so granted, and expended many thousands of dollars. The construction resulting has been apparently of great benefit to the public. There are in this condition of affairs many of the elements making up a contract between the sovereign and a grantee. So many considerations arise, however, on the question of piers and other facilities for water commerce, that this question may be pretermitted for the present. It may arise later in the case. However this may be, it is not to be supposed that the Secretary of War in 1913 intended to make a grant conflicting with his previous grant in 1906. The authority to make a new bulkhead may well have been upon the implied understanding that any conflict with previous grants would be attended to by the new grantee, who could not, by this authorization from the Secretary of War, acquire any greater powers than the Secretary of War himself had.

The grant of 1906 by the Secretary of War was only for a pier 125 feet wide, and does not expressly include slips on each side. But a pier without water on each side would not deserve its name, and the right of access to and from the sea on each side must be held to be implied. More particularly is this true in the case at bar, because the proper governmental authority of

Porto Rico expressly granted the right to the use of water front 75 feet wide on each side of the pier. The Secretary of War impliedly gave the right of access at each side, and the Porto Rican government gave rights of access for 75 feet at the shore line. The harbor board cannot set up greater rights than the people of Porto Rico, who created it.

It follows, therefore, that, upon the bill and evidence as submitted, the complainant has made out a prima facie right.

8. It is contended, however, that a preliminary injunction is discretionary, and that the court should take into account the relative inconvenience to the parties. That is, the injunction should not issue in favor of the complainant if it would cause a greater loss to the defendant than to the complainant. The principle contended for is doubtless correct within certain limits. Love v. Atchison, T. & S. F. R. Co. 107 C. C. A. 403, 185 Fed. 331; 1 Foster, Fed. Pr. 5th ed. § 294; Kryptok Co. v. Stead Lens Co. 39 L.R.A.(N.S.) 1, 111 C. C. A. 495, 190 Fed. 767. A preliminary injunction should not be granted if its issue would involve serious detriment to the public interests, such as hindering the lighting of a city by a company claiming a franchise therefor. Southwestern Brush Electric Light & P. Co. v. Louisiana Electric Light Co. 45 Fed. 893.

Under this principle it is claimed that the harbor board, or the public which it represents, will be seriously injured by the grant of such a preliminary injunction, in that the 75 feet now in question is the deepest part of the proposed harbor front, and not only will such injunction disturb the completion of the plans as a whole, but will interfere with the only immediately remunerative part of the bulkhead, and that the harbor board will not be able to obtain revenue to pay the interest on the bonds

Insular Dock Co. v. P. J. Carlin Constr. Co.

issued to pay for the bulkhead. The defendant Carlin Construction Company will also be injured, because it is a nonresident concern, and cannot use its plant to advantage while awaiting the issue of this litigation.

On the other hand, as shown above, if the work goes on the complainant will be cut off from the use of a sensible part of its pier. If the defendant can cut off 40 feet, it can upon principle cut off 400 feet and leave no pier, which is a *reductio ad absurdum*. If there is such a result to the defendants, it is not the fault of the complainant, but rather of the harbor board's leaving the only available source of revenue to be finished last instead of first. The grant from the Secretary of War expressly requires that the grantee shall dredge a sufficient depth about the bulkhead for vessels of a draught regularly operating in the harbor, and if the harbor board has not complied with this provision, which is as mandatory as any other, the complainant is not responsible and should not suffer therefor. No engineering reason appears why at least a temporary finishing cannot be placed to the proposed bulkhead 75 feet away from the pier which will enable it to be serviceable for the present. The ships using the pier in any event have a right to the use of 75 feet alongside the pier up to the bulkhead, and to that extent would interfere with the use of this 75 foot bulkhead if completed.

It is further alleged that work cannot be carried on on the other side of the pier, because the same questions may arise in connection with pier No. 1. The court cannot take this into account. *Non constat* that any. difficulty would arise with the owners of that pier, and even if that does come it is to be presumed that protection of all proper interests will be secured through bonds or otherwise.

9. It follows, therefore, that the application for a preliminary injunction must be granted, and the only remaining question is as to bond. How far the defendant harbor board may be injured is not clear, but it may very well be that the defendant P. J. Carlin Construction Company will suffer from this interference with the carrying out of its contract, for which they should be reimbursed if the complainant does not make out its case. A bond, therefore, should be requited, payable to both or either of the defendants, although it is not easy to fix the penal sum of such bond. The total contract is for about $300,000, and the 150 feet involved will be about 5 per cent of the total length as appears from the exhibits in the case. This may not be accurately true, but it perhaps affords a working basis for a bond, and upon that basis it seems that a bond in about the sum of $15,000 would be sufficient. That amount is therefore fixed as the penalty of the bond.

A decree will be entered restraining *pendente lite* the acts complained of as to pier, building, and 75 feet on each side, and protecting each defendant against claims of the other for nonperformance of the contract necessitated by the decree, and a preliminary injunction will issue as prayed upon filing of a bond in the usual form in the sum of $15,000, payable to the defendants jointly and severally. A restraining order will issue at once to be in force until such a bond can be reasonably prepared and filed.

It is so ordered.